STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent, v. JAMES WESTLAKE, Appellant, and ROBERT CHRIST et al., Respondents.

Second Department, January 14, 1974.

*Siben & Siben* (*Bernard M. Rosen* of counsel), for appellant.

*Curtis, Hart & Zaklukiewicz* (*Edward J. Hart* of counsel), for State Farm Mutual Automobile Company, respondent.

SHAPIRO, J.   In this action for a declaratory judgment upon an agreed statement of facts, defendant James Westlake appeals from a judgment of the Special Term in Nassau County which declared that the plaintiff insurer is not obligated to defend or indemnify him under the automobile policy which it issued to him (*State Farm Mut. Auto. Ins. Co.* v. *Westlake,* 74 Misc 2d 604).

### THE FACTS.

The appellant was insured by the plaintiff under a policy of automobile liability insurance.   On February 1, 1971, the appellant's wife, Wanda Westlake, was injured while a passenger in a car owned and operated by him.   Mr. and Mrs. Westlake brought suit against respondents Robert Christ and Louise Christ, the respective owner and operator of the other vehicle involved in the accident, based upon personal injuries received by Mrs. Westlake.   Thereafter, the Christs, as third-party plaintiffs, brought a third-party action against the appellant, alleging that he was liable in whole or in part for the injuries sustained by his wife and asking for judgment over.[1]   The appellant then requested the plaintiff to defend and, if necessary, to indemnify him for any recovery in the third-party action.

In reliance upon the terms of the insurance policy and the provisions of subdivision 3 of section 167 of the Insurance Law, the plaintiff refused the appellant's request.   Subdivision 3 provides that "no policy or contract shall be deemed to insure against any liability of an insured because of death of or injuries to his or her spouse    *    *    *    unless express provision relating specifically thereto is included in the policy." It is undisputed that the subject policy contains no such express provision spe-

---

1. As the trial court pointed out, the proper procedure for the Christs in the personal injury action would have been to assert their claim for relief in the form of a counterclaim (CPLR 3019, subd. [a]; *Moreno* v. *Galdorisi*, 39 A D 2d 450), but the difference in the nomenclature of the pleading is immaterial for the purpose of our decision.

cifically insuring the appellant against liability for injuries to his spouse.

## THE LAW.

The controversy between the parties arises out of the landmark decision in *Dole* v. *Dow Chem. Co.* (30 N Y 2d 143), which opened a veritable Pandora's box of first impression situations to be passed upon by the courts. This is one of them. The effect of *Dole* is to permit apportionment of damages among joint or concurrent tort-feasors in proportion to the allocable concurring fault. A concomitant of this rule allows one of several joint or concurrent tort-feasors who is sued by one suffering damages from the joint tort to counterclaim or cross-claim or, as in this case, to institute a third-party action against the other joint tort-feasors, to make them subject to payment of the damages in proportion to their fault.

This case therefore requires us to determine the effect of *Dole* on the appellant's rights to have the plaintiff defend and indemnify him on any claim recovered against him by the Christs. That in turn requires us to pass on the relevance and applicability of subdivision 3 of section 167 of the Insurance Law to the facts in the case at bar.

The Special Term, though recognizing that the legislative purpose in enacting what is now subdivision 3 of section 167 of the Insurance Law (former Insurance Law, § 109, subd. 3-a) at the same time that it was amending section 57 of the Domestic Relations Law (now General Obligations Law, § 3-313)[2], to make married women's tort rights and liabilities substantially the same as those of a single woman and to authorize tort suits by husband and wife against each other (L. 1937, ch. 669, §§ 1, 2), "was to protect insurance carriers from collusive actions between spouses arising out of automobile accidents" (*New Amsterdam Cas. Co.* v. *Stecker*, 3 N Y 2d 1, 7), and also recognizing that "there is little likelihood of fraud present" in the

2. The text of that section is as follows:

"1. A married woman has a right of action for an injury to her person, property or character or for an injury arising out of the marital relation, as if unmarried. She is liable for her wrongful or tortious acts; her husband is not liable for such acts unless they were done by his actual coercion or instigation; and such coercion or instigation shall not be presumed, but must be proved.

"2. A married woman has a right of action against her husband for his wrongful or tortious acts resulting to her in any personal injury as defined in section thirty-seven-a of the general construction law, or resulting in injury to her property, as if they were unmarried, and she is liable to her husband for her wrongful or tortious acts resulting in any such personal injury to her husband or to his property, as if they were unmarried."

instant action (*State Farm Mut. Auto. Ins. Co.* v. *Westlake*, 74 Misc 2d 604, 605, *supra*), declared it was impermissible for it to consider the legislative intent in enacting subdivision 3 of section 167, in light of the situation created by *Dole*. It also held that ruling against the plaintiff would in effect be extending the contract of insurance to include coverage for situations which the parties did not contemplate when they entered into their agreement. We do not agree with either conclusion.

In the instant case there is little likelihood of fraud in the action between the Westlakes and the Christs because Mrs. Westlake would have to be successful in her action against the Christs before the latter would have any right of indemnification against Mr. Westlake. Hence, the situation created by the *Dole* rule in cases such as this carries a built-in safeguard against any collusion between spouses directed against the insurer of one of the spouses. It is also obvious that when the Legislature enacted what is now subdivision 3 of section 167 of the Insurance Law it did not envision the judicial development of the rule of apportionment embodied in *Dole*; nor did it contemplate that it would, some 20 years later, enact legislation to require motor vehicle owners to establish financial security against claims for injury based on negligence by requiring owners to obtain auto liability insurance (see Vehicle and Traffic Law, art. 6; Insurance Law, art. 17-A).

We are aware of the fact that, for the most part, our courts have consistently ruled against any device, however indirect, to avoid the provisions of subdivision 3 of section 167. The statutory provision that no policy shall be deemed to insure against " any " liability of an insured because of injury to his spouse, unless the policy contain an express provision to that effect, has led to holdings that the legislative intent thus manifested requires exclusion from the coverage of the policy whenever indemnification is asked by a husband who is sought to be held liable for injuries sustained by his wife (see *Peka, Inc.* v. *Kaye,* 208 Misc. 1003, revd. on other grounds 1 A D 2d 879; *Fuchs* v. *London & Lancashire Ind. Co. of Amer.,* 258 App. Div. 603; *Feinman* v. *Rice Sons,* 2 Misc 2d 86, affd. 285 App. Div. 926, mot. for lv. to app. dsmd. 309 N. Y. 750). In *Peka* the court said (p. 1007) : " Courts may not lend themselves to an indirect avoidance of, or a flank attack upon, a law whose purpose is to protect against collusive actions between husbands and wives. One may not do indirectly what he should not do directly. To permit Dr. Kaye to claim over against Lloyd's because it is Peka, Inc., rather than his wife, who happens to be the plaintiff in the

action against him for negligent causation of her injuries, would be to honor form over substance. Such procedure, which would abet the frittering away of the law, may not be upheld."

But this line of cases is distinguishable from the situation here, because in each of them *the injured wife's claims were based directly on the negligent conduct of the other spouse.* Here, the wife is not directly or indirectly making a claim against her spouse to recover for the injuries she sustained. On the contrary, her claim is predicated solely on the negligent conduct of third parties (the Christs). It is their negligence upon which the wife's right of recovery depends.

The plaintiff here is not being called upon to defend its insured against an action brought against him by his spouse, but rather to defend him against a claim by the Christs in which they seek to be indemnified for their payment of that portion of his wife's injuries which is attributable to his negligence. Subdivision 3 of section 167 of the Insurance Law never contemplated such an exclusion and its intended purpose should not be so extended, particularly in view of the provisions of the Motor Vehicle Financial Security Act (now article 6 of the Vehicle and Traffic Law), enacted some 20 years after the adoption of what is now subdivision 3 of section 167 of the Insurance Law, which declared in section 310 (of the Vehicle and Traffic Law) "that it is a matter of grave concern that motorists shall be financially able to respond in damages for their negligent acts" and which barred registration in our State of any motor vehicle without proof of the owner's financial security (Vehicle and Traffic Law, § 312). Proof of financial security was defined in the statute as "proof of ability to respond in damages for liability arising out of the ownership, maintenance or use of a motor vehicle as evidenced by an owner's policy of liability insurance" (Vehicle and Traffic Law, § 311, subd. 3). That legislative declaration, an implementation of a public policy of compulsory liability insurance to secure the right of one injured by the negligent operation of a motor vehicle to recover damages for the injuries he has suffered in spite of the inadequate financial responsibility of the tort-feasor, was further strengthened by the enactment in 1958 of the Motor Vehicle Accident Indemnification Corporation Law (Insurance Law, art. 17-A). Subdivision (2) of section 600 of the Insurance Law, part of that enactment, declared: "The legislature finds and declares that the motor vehicle financial security act as enacted in nineteen hundred fifty-six, which requires the owner of a motor vehicle to furnish proof of financial security as a condition to registration, fails to

accomplish its full purpose of securing to innocent victims of motor vehicle accidents recompense for the injury and financial loss inflicted upon them, in that the act makes no provision for the payment of loss on account of injury to or death of persons who, through no fault of their own, were involved in motor vehicle accidents caused by (1) uninsured motor vehicles registered in a state other than New York, (2) unidentified motor vehicles which leave the scene of the accident, (3) motor vehicles registered in this state as to which at the time of the accident there was not in effect a policy of liability insurance, (4) stolen motor vehicles, (5) motor vehicles operated without the permission of the owner, (6) *insured motor vehicles where the insurer disclaims liability or denies coverage* and (7) unregistered motor vehicles. The legislature determines that it is a matter of grave concern that such innocent victims are not recompensed for the injury and financial loss inflicted upon them and that the public interest can best be served by closing such gaps in the motor vehicle financial security act " (emphasis supplied).

If the ruling of the trial court in this case is to stand, these clear legislative mandates, that innocent victims of motor vehicle accidents be recompensed for the injuries sustained by them, might well be frustrated.

Such a wooden application of subdivision 3 of section 167 of the Insurance Law to a factual pattern not contemplated at the time of its adoption would not only frustrate the clear legislative intention manifested by the adoption of the Motor Vehicle Financial Security Act and the Motor Vehicle Accident Indemnification Corporation Law, but also would have the twofold effect of making the appellant a self-insurer on the claim asserted against him by the Christs and, in addition, it would make the Christs' ability to collect any judgment they might obtain against Westlake dependent on his personal financial ability to respond.[3]

Even if there were here a true conflict between two statutory provisions, we should resolve that conflict by upholding the

---

3. There is another possible evil that might result from the application of both *Dole* and the insurance exclusion to the situation here and that is the near-certainty that the injured plaintiff spouse might only recover a portion of her actual damages. Although *Dole* has not changed the existing rule that a plaintiff is entitled to recover all of her damages from any one of the tort-feasors (*Kelly* v. *Long Is. Light. Co.*, 31 N Y 2d 25, 30; *Stein* v. *Whitehead*, 40 A D 2d 89, 91), what would probably happen in a case such as this is that she would, as a practical matter, have to pay over part of her recovery in payment of that portion of the judgment for which her spouse is held liable.

provision which is consistent with the most recently established legislative purpose. In our view, that purpose is embodied in the declaration of policy in subdivision (2) of section 600 of the Insurance Law, "securing to innocent victims of motor vehicle accidents recompense for the injury and financial loss inflicted upon them," and it is best effectuated by reading subdivision 3 of section 167 of the same law as not allowing an insurance carrier to disclaim its obligation to defend and indemnify the insured spouse where he is made the object of a claim as a joint or concurrent tort-feasor under *Dole*.[4]

---

4. So far as our research has disclosed, the issue in this case has never received appellate review and that is understandable in light of the recency of the *Dole* decision. However, several such cases have been passed upon at the trial level, with differing conclusions. *Smith* v. *Employer's Fire Ins. Co.* (72 Misc 2d 524) was the first of such cases. It held for the insurance company and it was relied upon and followed in *Perno* v. *Exchange Mut. Ins. Co.* (73 Misc 2d 346). However, *United States Fid. & Guar. Co.* v. *Franklin* (74 Misc 2d 506) went the other way. (See, also, *Aetna Cas. & Sur. Co.* v. *DeLosh*, 73 Misc 2d 275.)

The commentators have also vacillated on this issue. Robert J. Smith, writing in the fall 1972 Journal of the Insurance, Negligence and Compensation Law Section of the New York State Bar Association (p. 57), said: "It is submitted that if the legislative purpose of section 167(3) will not be served, the courts will be most reluctant to construe this section so as to exclude coverage where a *Dole* cross-action has been instituted against the insured as a result of an action brought by the insured's spouse to recover damages for death, injuries or property damage."

Dean McLaughlin in his article on New York Trial Practice in the New York Law Journal (Dec. 8, 1972, pp. 1, 5) said: "The question remains open, therefore, whether section 167 of the Insurance Law relieves the company of its duty to defend a counterclaim in such a case. The problem cannot be resolved easily for the simple reason that the statute was drafted long before anyone conceived *Dole*. The plain purpose of the statute was to get insurance companies out of the cross-fire which would result from an action between a husband and wife with all the attendant temptations to fraud, perjury, etc. On its face, that policy would seem irrelevant in a situation where the husband and wife joined as plaintiffs and the defendant counterclaimed for indemnification against the husband. Any temptation upon the part of the husband to 'throw the lawsuit' in favor of his wife would in most cases be overcome by the realization that an admission upon the part of the husband that he had contributed to the accident would defeat his own cause of action. Of course, if his injuries were minor, and hers major, the temptation would still be there and the problem would come into sharper focus.

"A helpful analogy—although admittedly not directly in point—may be found in the Workmen's Compensation Law. Under that law an employee may not bring an action against his employer. Yet, if the employee sues a third-party tortfeasor, it has long been held that the third-party tortfeasor may implead the employer when the employer's negligence was active, and that of the defendant was merely passive. In these cases, the courts have held that there is no violation of the statutory prohibition against an employee suing his employer since, analytically, the action is being brought by the third-party

The judgment should be reversed, on the law, with costs to the appellant against the plaintiff, and the case remanded to the Special Term, with the direction that that court make and enter a judgment in favor of the appellant declaring that the plaintiff is required to furnish a defense to the appellant as the third-party defendant in the third-party action in question and to pay any judgment which may be entered against him in the third-party action within the monetary limits of his insurance policy.

BENJAMIN, J. (dissenting). I would have little difficulty accepting the majority view herein if it were possible to construe

---

tortfeasor. It could be argued, that in the husband-wife situation, the same reasoning ought to obligate the insurance company to defend the husband against a counterclaim based upon his own negligence. The weakness in the argument, however, is that the Insurance Law provision does not forbid suits by one spouse against the other but relieves the insurance company of the duty to defend against ' any liability of an insured ' because of ' injuries to his or her spouse,' and it might reasonably be held that this language is sufficiently sweeping to distinguish the problem from the Workmen's Compensation cases. It is a close question, indeed."

The last point as to the weakness of the Workmen's Compensation Law argument made by Dean McLaughlin apparently is based solely on the language of subdivision 3 of section 167 and ignores the point he made earlier that the subdivision is directed only against the temptations toward fraud, perjury, etc., likely to result from an action between a husband and wife in which the husband would tend to " throw the lawsuit " in favor of his wife, a danger, he concedes, disappears in a *Dole* situation, especially where, as here, the husband is not even a claimant for any injuries he has suffered.

In an article in volume 47 (p. 762) of the St. John's Law Review, under the heading *"Dole* v. *Dow Chemical Co.*: Recent Developments ", we find the following:

" Another frequent *Dole* claim seeks an apportionment of liability between a defendant-driver and the driver of the vehicle in which the plaintiff was a passenger. When the other driver is the plaintiff's spouse, a question arises as to the obligation of his insurance company to defend and indemnify him against the claim in light of Insurance Law section 167(3), which provides that no liability insurance policy shall be deemed to insure against liability incurred because of death of or injury to one's spouse. In *Smith* v. *Employer's Fire Insurance Co.,* the Supreme Court, Tompkins County, held that section 167(3) absolves an insurer from defending such a *Dole* claim, citing an old line of cases which so held as to third-party indemnity actions by an employer against a husband after the wife had sued the employer.

" The anti-collusion rationale of Insurance Law section 167(3), however, appears to be irrelevant in many *Dole* situations, as for example, when a defendant counterclaims against a co-plaintiff spouse.

" An instructive analogy may be that of the Workmen's Compensation Law, which provides the employee's exclusive remedy against his employer. This has not precluded recovery over from the employer by a third-party co-tortfeasor sued by an employee. Hence, the *Dole* claim by the defendant against the plaintiff's spouse could be construed as one purely for indemnity and not an intraspousal claim, thus requiring the insurer to defend and indemnify the spouse."

subdivision 3 of section 167 of the Insurance Law as requiring the insurer to provide the insured spouse with coverage and a defense in this situation. However, where, as here, the statutory language is broad and unambiguous and the legislative intent clear, we cannot change its import, in the guise of judicial interpretation, merely because the Court of Appeals has now adopted a doctrine of apportionment of responsibility among defendants. The language of that provision in the Insurance Law is crystal clear: '' No policy or contract shall be deemed to insure against *any* liability of an insured because of * * * injuries to his or her spouse '' (emphasis added). It is broad enough to encompass not only the insured's direct liability to the spouse, but also any liability to another party seeking indemnity on account of injuries to the spouse. I agree that, in enacting this insurance exclusion, the Legislature could not possibly have foreseen the profound change in the law wrought by *Dole* v. *Dow Chem. Co.* (30 N Y 2d 143). But, by the same token, a re-examination of the legislative intent in light of *Dole* becomes a mere self-serving exercise.

The insurance exclusion was enacted into law in 1937 (as subdivision 3-a of section 109 of the former Insurance Law) simultaneous with the amendment of section 57 of the Domestic Relations Law (now General Obligations Law, § 3–313) (L. 1937, ch. 669, §§ 1, 2) terminating interspousal immunity. Its avowed purpose was to protect insurance carriers against loss through collusive actions between husband and wife (*Fuchs* v. *London & Lancashire Ind. Co. of Amer.*, 258 App. Div. 603, 605). The possibility of fraud and collusion is greatly diminished in a *Dole* situation, although there may still be occasions when the incentive for fraud is present, such as where the plaintiff spouse's damages are far in excess of the other driver's insurance coverage. But the protection afforded the insurance carrier is also, very simply, against any increase in liability without a commensurate increase in premium. Indeed, subdivision 3 of section 167 recognizes that the carrier and its insured may make express provision in the policy for insurance coverage in these situations; and this additional coverage would, no doubt, be dependent upon payment of an additional premium, assuming the carrier agrees to include it at all.

In reading subdivision 3 of section 167 to require coverage of the insured spouse where he or she is brought into the litigation as a joint tort-feasor under *Dole,* the majority is, in my view, impermissibly extending the contract between the spouse and the carrier to require coverage in a situation not contemplated

by either party when the agreement was executed (see *Employers' Liab. Assur. Corp.* v. *Aresty,* 11 A D 2d 331, 334–335, affd. 11 N Y 2d 696). The majority is rewriting the contract and depriving the carrier of the protection afforded it by the statute. Such a change in the statute, and it is basically the statute that is being dismembered, must be made by the Legislature, not the courts.

*Dole,* however, is a Judge-made rule and subject to continuing review and reinterpretation by the courts. (See, e.g., *Codling* v. *Paglia,* 32 N Y 2d 330, 344–345, where the Court of Appeals declined to judicially extend the doctrine of apportionment of responsibility into the area of plaintiffs' negligence.) And it is *Dole,* rather than the statutory insurance exclusion, which, in my view, is being improperly applied in this factual situation. *Dole* was never intended to change the long-standing rule that a plaintiff is entitled to recover all of his or her damages from any one of the joint tort-feasors (*Kelly* v. *Long Is. Light. Co.,* 31 N Y 2d 25, 30; *Stein* v. *Whitehead,* 40 A D 2d 89, 91). It was concerned solely with a more equitable apportionment of liability or damages as between joint tort-feasors. Nevertheless, when *Dole* is invoked so as to allow the driver-spouse to be brought into the litigation by the other driver, the result is that the innocent plaintiff spouse will almost certainly recover only partial damages. This is so because even though the other driver or, more properly, his insurer, may be required to satisfy the entire judgment, he will then enter a judgment against the uninsured driver-spouse for the latter's judicially apportioned share of the damages. This second judgment will, as a practical matter, be satisfied either out of the family finances of the couple or by the injured plaintiff spouse's simply returning a portion of her recovery to the other driver's insurer. In addition, the family finances or the injured plaintiff's actual recovery will be further effectively diminished by the cost of the driver-spouse's defense. Since *Dole* was clearly never intended to prejudice the injured plaintiff vis-à-vis the defendants, it follows that the legally uninsurable driver-spouse should never have been brought into the litigation, as a defendant, by any other defendant, for to do so impermissibly impairs the injured plaintiff's paramount right to recovery of full damages. Such an application of the *Dole* rule to these facts would be pragmatically unsound and realistically unfair (see *Kelly* v. *Long Is. Light Co.,* 31 N Y 2d 25, 30, *supra*). To the extent that this view would contravene this court's decision in *Moreno* v. *Galdorisi* (39 A D 2d 450), I would overrule that decision.

324

In conclusion then, I would modify the judgment so as to provide not only that the plaintiff insurer is not obligated to defend or indemnify defendant Westlake but, further, that defendant Westlake was improperly joined as a third-party defendant in his wife's action.* Anything less would deprive the wife of recovery of her full measure of damages and, even worse, would possibly result in catastrophic economic losses to her family, contrary to the express intent of *Dole*.

MUNDER, J. (dissenting). I concur in so much of the dissenting opinion of Mr. Justice BENJAMIN as holds that the majority is impermissibly extending the contract between the spouse and the insurance carrier and that any change in the statute must be made by the Legislature, not the courts.

MARTUSCELLO, Acting P. J. and BRENNAN, J., concur with SHAPIRO, J.; BENJAMIN, J., dissents and votes to modify the judgment as indicated in an opinion; MUNDER, J., dissents and votes to modify the judgment as indicated in an opinion.

Judgment of the Supreme Court, Nassau County, entered June 11, 1973, reversed, on the law, with costs to appellant against plaintiff, and case remanded to the Special Term, with the direction that that court make and enter a judgment in favor of appellant declaring that plaintiff is required to furnish a defense to appellant as the third-party defendant in the third-party action in question and to pay any judgment which may be entered against him in the third-party action within the monetary limits of his insurance policy.

---

* All parties in the main action were served and appeared in this declaratory judgment action.